**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

_____
                                          :
JAMES HUBBARD                             :     **Case No.: 1:20-cv-1272**
8980 Norwalk Rd.
Litchfield, OH 44253                      :     **Judge**

           Plaintiff,                     :     **Magistrate Judge**

      v.                                  :     Jury Demand Endorsed Herein

PLASTIPAK PACKAGING, INC.                 :
c/o CT Corporation System
4400 Easton Commons Way                   :
Suite 125
Columbus, Ohio 43219,                     :

           Defendant.                     :
_____

## PRELIMINARY STATEMENT

Plaintiff James Hubbard ("Mr. Hubbard") brings this action pursuant to 29 U.S.C. § 2617(a)(2) against Defendant Plastipak Packaging, Inc. (the "Defendant"), seeking monetary damages, interest thereon, liquidated damages and equitable relief, including reinstatement or front pay in lieu thereof, as a result of Defendant treating Mr. Hubbard's FMLA covered leave time as occurrences under Defendant's attendance policy, and terminating Mr. Hubbard as a result. Such treatment and termination constitute 1) a denial of Mr. Hubbard's substantive rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA") for a reason connected with his FMLA leave, in violation of 29 USC § 2615(a)(1), and 2) discrimination and retaliation against Mr. Hubbard for using FMLA leave, in violation of 29 USC § 2615(a)(2).

1

## JURISDICTION AND VENUE

1. This action arises under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

2. Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 because this claim arises under the laws of the United States.

3. Venue is proper in the Northern District of Ohio, Eastern Division under 28 U.S.C. § 1391(b) because the defendant is a company doing business in this district and division and the claims arise in this district and division.

## PARTIES

4. James Hubbard is an individual residing in Litchfield, Medina County, Ohio.

5. Defendant is a Delaware for-profit corporation.

6. Defendant's principal place of business is in Plymouth, Michigan.

7. Defendant operates a manufacturing facility located in Medina, Medina County, Ohio (the "Medina Plant").

8. Defendant is licensed to do business in Ohio as a foreign corporation.

9. CT Corporation, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219 is Defendant's Ohio statutory agent.

## FACTUAL ALLEGATIONS COMMON TO BOTH COUNTS

10. Defendant is a person engaged in commerce or in an industry or activity affecting commerce.

11. Defendant employs 50 or more employees at the Medina Plant for each working day during each of 20 or more calendar workweeks in the year preceding Mr. Hubbard's taking of FMLA covered leave.

12. Defendant is an "Employer" as that term is defined by 29 U.S.C. § 2611(4).

13. Defendant hired Mr. Hubbard as a Maintenance Technician at its Medina Plant on March 15, 1982.

14. As of June 22, 2018, Defendant had employed Mr. Hubbard for at least 12 months and for at least 1,250 hours of service during the preceding 12-month period.

15. Mr. Hubbard was an "Eligible employee" under the FMLA, as that term is defined by 29 U.S.C. § 2611(2).

16. On June 17, 2018, Mr. Hubbard became dehydrated while working in a hot barn on a hot day without drinking adequate amounts of water.

17. Mr. Hubbard's dehydration constituted an illness, impairment, and/or physical condition.

18. Mr. Hubbard was unable to work from June 18, 2018 through June 25, 2018, because of dehydration and its symptoms.

19. Mr. Hubbard's inability to work constituted an "incapacity" as that term is defined by 29 C.F.R. § 825.113.

20. Mr. Hubbard's period of incapacity lasted for more than three consecutive, full calendar days.

21. Mr. Hubbard received treatment for dehydration and its symptoms on June 21, 2018 and June 25, 2018, as the term "treatment" is defined by 29 C.F.R. §§ 825.113(c) and 825.115.

22. Mr. Hubbard received each treatment from a health care provider.

23. Mr. Hubbard had a serious health condition, as that term is defined by 29 C.F.R. § 825.113.

24. On June 18, 2018, Mr. Hubbard called off work pursuant to Defendant's call-off procedure.

3

25.    On June 18, 2018, Mr. Hubbard texted his supervisor, "Rob," at 6:15 a.m. to tell Rob why he was unable to work, specifically, "I'm so dizzy I can't hardly stand up."

26.    Rob replied, "Ok. Thanks. Take care of yourself."

27.    On June 20, 2018, Mr. Hubbard texted Rob to inform him that the earliest doctor's appointment he could schedule was on the following day, Thursday, June 21, 2018.

28.    On June 20, 2018 Mr. Hubbard texted Rob to inform him that "I'll try to make it tomorrow but as soon as I start doing something I have to sit down because I get so dizzy."

29.    On June 21, 2018, Mr. Hubbard received treatment from his health care provider for dehydration.

30.    During his June 21, 2018 appointment, Mr. Hubbard asked his health care provider to release him to return to work.

31.    Mr. Hubbard's health care provider refused to release him to return to work, instructing Mr. Hubbard to "call once symptoms improve and we can discuss return to work. In meantime, as long as (symptoms are) present, [Mr. Hubbard] should not work."

32.    On June 21, 2018, following his treatment by a health care provider, Mr. Hubbard texted "Darlene," the Medina Plant Safety Director, and asked her to relay to "Julie," the Medina Plant Human Resources Director, that he "was dehydrated and I have to have blood work done tomorrow. I should be able to go back to work on Monday."

33.    Darlene replied, "Will do. I hope you feel better."

34.    Within an hour, Darlene replied again, stating that "Julia said she hopes you feel better and don't forget the work release from the doctor."

35.    On June 22, 2018, Mr. Hubbard had his blood work done.

4

36. On June 25, 2018 at 11:57 am, Mr. Hubbard texted Rob, his supervisor, to inform him that Mr. Hubbard's "Dr. Just called me they will squeeze me in today at 2:30."

37. On June 25, 2018, Mr. Hubbard On June 25, 2018, at 3:04 pm, Mr. Hubbard texted Rob to inform him that we would be "Back tomorrow."

38. On June 25, 2018, Mr. Hubbard's health care provider examined him to determine if a serious health condition existed and to evaluate the condition.

39. On June 26, 2018, Mr. Hubbard returned to work, where he presented the work release he had obtained the previous day from his health care provider.

40. Defendant did not notify Mr. Hubbard as to his eligibility for FMLA leave.

41. Defendant did not notify Mr. Hubbard whether it designated his leave time as covered by the FMLA or not.

42. Pursuant to its attendance policy, Defendant issues a Step 1 verbal warning when an employee has a total of four (4) attendance "occurrences" in a rolling twelve month period.

43. Defendant issues a Step 2 written warning when an employee has a total of six (6) occurrences in a rolling twelve (12) month period.

44. Defendant issues a Step 3 final warning when an employee has a total of eight (8) occurrences in a rolling twelve (12) month period.

45. Defendant subjects an employee to termination when the employee has a total of ten (10) occurrences in a rolling twelve (12) month period.

46. Defendant treated Mr. Hubbard's FMLA covered leave time for treatment of his dehydration as occurrences under Defendant's attendance policy.

47.    Defendant applied three "flex" days that Mr. Hubbard had available to excuse his FMLA covered absences on June 18, June 19 and June 20, 2018.

48.    Defendant treated Mr. Hubbard's June 21, 2018 FMLA protected absence as an occurrence under Defendant's absenteeism policy.

49.    Defendant treated Mr. Hubbard's June 22, 2018 FMLA protected absence as an occurrence under Defendant's absenteeism policy.

50.    On or about July 17, 2019, Defendant terminated Mr. Hubbard for a total of 10 occurrences during the previous twelve (12) months that included the FMLA protected absences on June 21, 2018 and June 22, 2018.

### COUNT I
### (FMLA Interference)

51.    Mr. Hubbard incorporates the preceding allegations as if fully set forth herein.

52.    Mr. Hubbard was entitled to leave under the FMLA.

53.    Mr. Hubbard gave Defendant timely notice of his requests for leave time for the examination and treatment of, and his recovery from, dehydration.

54.    Mr. Hubbard gave Defendant sufficient information for Defendant to reasonably determine that the FMLA might apply to his leave requests.

55.    Defendant failed to give Mr. Hubbard adequate general notice of his rights and responsibilities under the FMLA.

56.    Defendant failed to give Mr. Hubbard notice of his eligibility for FMLA leave.

57.    Defendant failed to give Mr. Hubbard notice that it did not designate his leave time as covered by the FMLA.

58. Defendant treated FMLA covered absences as attendance occurrences under Defendant's attendance policy.

59. Defendant denied Mr. Hubbard the FMLA benefits to which he was entitled.

60. Defendant interfered with the FMLA benefits to which Mr. Hubbard was entitled.

61. As a result of Defendant's interference with and denial of Mr. Hubbard's exercise of his FMLA rights, Mr. Hubbard has lost wages and benefits and has incurred attorneys' fees and costs.

## COUNT II
### (FMLA Discrimination and Retaliation)

62. Mr. Hubbard incorporates the preceding allegations as if fully set forth herein.

63. Mr. Hubbard availed himself of a protected right under the FMLA.

64. Mr. Hubbard was adversely affected by an employment decision. Specifically, Defendant terminated Mr. Hubbard's employment.

65. There is a causal connection between Mr. Hubbard's protected activity and the adverse employment action. Specifically, Defendant treated Mr. Hubbard's FMLA covered leave as attendance infractions under its attendance policy and terminated Mr. Hubbard's employment as a result of Mr. Hubbard taking FMLA covered leave.

66. As a result of Defendant's discrimination and retaliation against Mr. Hubbard because he availed himself of his FMLA rights, Mr. Hubbard has lost wages and benefits and has incurred attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Hubbard demands:

A.    Unpaid back wages at his hourly wage rate, as adjusted for periodic increases;

B.      Interest thereon;

C.      An equal amount as liquidated damages;

D.      All costs and attorneys' fees incurred in prosecuting this claim;

E.      Reinstatement, or, if reinstatement is not feasible, front pay; and

F.      Such further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Stuart G. Torch
Stuart G. Torch (0079667)
stuart@ekrtlaw.com
Neil E. Klingshirn (0037158)
neil@ekrtlaw.com
Eflvin, Klingshirn, Royer & Torch, LLC
4700 Rockside Road
Suite 530
Independence, Ohio 44131
(216) 382-2500 (voice)
(216) 381-0250 (fax)

*Counsel for Plaintiff James Hubbard*

## Jury Demand

Plaintiff hereby demands a trial by jury of all issues triable to a jury.

/s/ Stuart G. Torch
One of the attorneys for Plaintiff